UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                         Chapter 12 Case

Wade Stephen Kallevig and                 Case No. 21-40243
Christina Marie Kallevig,
Debtors.

---

## MODIFIED CHAPTER 12 PLAN

---

### ARTICLE I
SUMMARY OF THE PLAN

This plan shall continue for a period of 60 months from its effective date. The property of the Debtor is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The Debtor will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S. C. Section 1225, for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

### ARTICLE II
DEFINITIONS

1.      "Creditors" means all entities having a claim against the debtor.

2.      "Secured Creditor" means a creditor with a lien or security interest in property of the debtor.

3.      "Claim" means a debt that is owed by the Debtor.

4.      "Effective Date" means the date on which this plan is signed by all relevant parties.

5.      "Trustee" means the Chapter 12 Trustee.

### ARTICLE III
CLASSIFICATION OF CLAIMS

CLASS 1      Costs of Administration

CLASS 2      Secured Claims

    A.  Heritage Bank – Real Property and Equipment

1

B.  Bremer Bank – Real Property

C.  John Deere Financial – Judgment Lien

D.  Bremer Bank – 2013 Ford F150

E.  Wells Fargo – 2017 Ford Edge

CLASS 3        Priority Unsecured Claims

CLASS 4        General Unsecured Claims

CLASS 5        Executory Contracts and Leases

## **ARTICLE IV**
TREATMENT OF CLAIMS AND INTEREST

CLASS 1 - Costs of Administration

Class 1 includes compensation and expenses of professionals and court costs and all expenses incurred by the Debtor after the filing of their petition and before the entry of the order of confirmation and expenses of professionals and court costs, shall be paid in full on the effective date of the plan. Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court.

A.  Attorney's Fees – Attorney's Fees will be paid after court approval to Debtor's attorneys, Stermer & Sellner, Chtd., 102 Parkway Drive, P.O. Box 514, Montevideo, MN 56265.

B.  Trustee's Fees - The Chapter 12 Trustee shall make application to the Court for approval of Trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The Debtor shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein**. **Creditors shall only accept direct payments from the debtor if specified in the Plan.**

CLASS 2 – Secured Claims

Class 1 consists of the following secured claims:

**A.  Heritage Bank**

Debtors owe Heritage Bank approximately $1,668,152.21, which is secured on a cross-collateralized basis by the Debtors' real property, the Debtors' crops and their proceeds, the equipment of Debtors and

2

Kallevig Agri Products, Inc., a Minnesota corporation owned entirely by the Debtors, and the interests of Kallevig Agri Products, Inc. in MN Soybeans Processors and Bushmills Ethanol. Kallevig Agri Products, Inc. is obligated to Heritage Bank for approximately $1,224,949.98 of the foregoing $1,668,152.21 debt, and all Heritage Bank debt for which Kallevig Agri Products, Inc. is the primary obligor has been guaranteed by the Debtors. Debtors own and control Kallevig Agri Products, Inc. Heritage Bank debt and claim includes current and future accrued interest and legal costs. The Heritage Bank may be entitled to pre- and post-petition confirmation interest, attorneys' fees, costs, disbursements and other charges, under 11 U.S.C. 506(b). The parties may stipulate to those amounts, or Heritage Bank may move the Bankruptcy Court for approval and allowance of them, at reasonable times and intervals

Debtors believe the real property securing the Heritage Bank debt has a value of approximately $2,555,400.00. The Heritage Bank debt is also secured by crop and personal property as referenced above. Heritage Bank's debt is therefore fully secured. The Heritage Bank debt may be prepaid, in whole or in part, without prepayment fee.

No real estate or equipment collateral of Heritage Bank may be sold by Debtors or Kallevig Agri Products, Inc. without Court approval following notice to creditors or the consent of Heritage Bank, and all proceeds derived from any sale of Heritage Bank collateral shall be paid to Heritage Bank. All Heritage Bank debt shall be secured by all Heritage Bank collateral on a cross-collateralized basis until such time that said debt has been repaid in full.

All loan and collateral documents evidencing, governing and securing the Heritage Bank debt prior to the filing of this bankruptcy case shall, unless expressly otherwise provided by the foregoing provisions of this Plan or by statute, continue unmodified and in full force and effect. In addition to timely complying with the reporting requirements of the Heritage Bank loan documents by providing such reports and documents directly to Heritage Bank, the Debtors shall provide to Heritage Bank copies of all reports provided to the bankruptcy trustee, including without limitation operating reports and bank statements, by forwarding the same electronically to Heritage Bank using JLaFleur@heritagebankna.com or such different email address as Heritage Bank may provide to Debtors, simultaneous with their transmission to the trustee's office. Debtors shall maintain insurance on all property subject to the mortgages and security interests in favor of Heritage Bank, with deductibles consistent with those carried historically, with Heritage Bank named as loss payee, or an additional insured where applicable, insuring such property for its full, insurable value against perils covered by fire and extended coverage policies of insurance. Debtors shall preserve, maintain in good condition and repair the property subject to the mortgages and security interests in favor of Heritage Bank.

In the event of a default under this Article II, Class 2, Section A. or any default under the Chapter

3

12 Plan of Kallevig Agri Products, Inc., Heritage Bank shall have the right to give Debtors and Kallevig Agri Products, Inc. fourteen (14) days' written notice of such default.  If the Debtors and Kallevig Agri Products, Inc. fail to cure such default(s) within said fourteen (14) day period, or if said notice of default is the third given by Heritage Bank during any twelve (12) month period, then upon filing an affidavit regarding such default with the Court, the Court in its discretion may enter and order stating: Heritage Bank shall be entitled to an order modifying the automatic stay in this bankruptcy case and in the Kallevig Agri Products, Inc. bankruptcy case to allow Heritage Bank to accelerate the Heritage Bank debt owed by Debtors and Kallevig Agri Products, Inc. and enforce its state law remedies, including foreclosure, repossession, and collection of the Heritage Bank debt against Debtors, Kallevig Agri Products, Inc., all co-debtors, and all collateral.

For purposes of repayment of the Heritage Bank debt, the total debt will be allocated to two portions and repaid in accordance with the following terms:

Portion One

The sum equal to $1,268,152.21 plus accrued interest and legal costs through the Effective Date shall accrue interest at the initial rate of four and three-fourths (4.75%) percent per annum, and said rate shall be adjusted on the fifth (5th) anniversary of the Effective Date (the "Adjustment Date") to be the rate equal to one and one-half (1.50%) percent per annum in excess of the Prime Rate of interest as of the Adjustment Date as said Prime Rate is reported in the Wall Street Journal or similar publication.  Interest shall be computed on the basis of a year of three hundred sixty (360) days, but charged for the actual number of days during which principal is outstanding.  The Debtors shall make quarterly payments of principal and accrued interest in the following amounts in 2021: (i) $8,250.00 on or before September 30, 2021; and (ii) $66,750.00 on or before December 31, 2021.  In each year beginning in 2022, the Debtors shall make quarterly payments of principal and accrued interest in the following amounts: (i) $29,250.00 on or before the thirty-first (31st) day of each March beginning March 31, 2022; (ii) $8,250.00 on or before the thirtieth (30th) day of each June, beginning June 30, 2022; (iii) $8,250.00 on or before the thirtieth (30th) day of each September, beginning September 30, 2022; and (iv) $29,250.00 on or before the thirty-first (31st) day of each December, beginning December 31, 2022.  On December 31, 2031, all Heritage Bank debt shall mature and become fully due and payable.  The amounts of the foregoing quarterly payments shall be recalculated and if necessary adjusted as of the Adjustment Date to account for any change in the effective interest rate as set forth above and to maintain the original thirty (30) year amortization period.  Each payment received by Heritage Bank shall be applied to the outstanding Heritage Bank debt which shall be comprised of the loans existing prior to the date this bankruptcy case was filed, and Heritage Bank may allocate the payments received to the loans in whatever manner it deems appropriate.

Portion Two

The sum equal to $400,000.00 plus accrued interest and legal costs through the Effective Date shall accrue interest at the initial rate of five and one-fourth (5.25%) percent per annum, and said rate shall be adjusted on each anniversary of the Effective date to the rate equal to two (2.00%) percent per annum in excess of the Prime Rate of interest as reported in the Wall Street Journal or similar publication. The Debtors shall sell their remaining 2020 crop and shall cause Kallevig Agri Products, Inc. to sell its interests in MN Soybeans Processors and Bushmills Ethanol to pay Portion Two. All proceeds of said sales shall be paid to Heritage Bank and applied to Portion Two until paid in full with any remaining proceeds applied to Portion One. The Debtors shall cause these sales to occur as soon as practicable, and shall not cause any delay in the sale. In any event, not less than $87,500.00 shall have been paid to Heritage Bank for Portion Two by December 31, 2021, and all of the Debtors' 2020 crop shall have been sold by December 31, 2021. The MN Soybean Processors and Bushmills Ethanol interests shall be sold by December 31, 2022. All said sales shall be at fair market value and all proceeds shall be paid to Heritage Bank. On December 31, 2022, any remaining balance of Portion Two shall mature and become fully due and payable.

### B. Bremer Bank, N.A.

The Debtor owes Bremer Bank, N.A. approximately $212,976.74, which is secured by Debtors homestead. Debtor scheduled the real estate with a value of $178,500.00. Debtors will continue to make payments pursuant to the original loan agreement with Bremer Bank, N.A. outside of the plan.

### E. John Deere Financial

The Debtor owes John Deere Financial ("John Deere") approximately $394,141.71, which is secured by Debtors' real estate via a judgment lien. Debtor scheduled the real estate equity (not including Heritage Bank's Loan and Bremer Bank's loan) with a value of $514,325.00. $394,141.71 shall be refinanced into one loan secured by Debtor's real estate. Interest will accrue on this the new principal balance at a rate of 4.00% per annum. Principal and interest will be amortized for a 30-year term, with a balloon payment due in five years after the completion of the Chapter 12 Plan. Debtors may prepay the claims in whole or in part at any time. Payments shall be $23,500.00 per year, with the first payment due by December 31, 2021. Principal and interest will be fully amortized by way of equal payments, with the exception of the balloon payment.

### C. Bremer Bank – 2013 Ford F150

Debtor, Wade Kallevig, co-signed a promissory note with Bremer Bank, N.A., for a 2013 Ford F150, VIN: 1FTFW1ETODKE28498. This vehicle belongs to Debtor's son and Debtor's son makes the payments on this loan. This debt is fully secured. Debtor's son will continue to make payments pursuant to the original loan agreement with Bremer Bank, N.A. outside of the plan.

### D. Wells Fargo

The Debtors owe Wells Fargo Bank N.A. ("Wells Fargo") approximately $12,157.27, which is secured by 2017 Ford Edge, VIN: 2FMPK4K92HBB15300. This debt is fully secured. Debtors will continue to make payments pursuant to the original loan agreement with Wells Fargo outside of the plan.

CLASS 3 – Priority Unsecured Claims

Class 3 consists of all claims entitled to priority under § 507, including the following:

   A.  Internal Revenue Service: $151,505.06 – Will be paid in full pursuant to class 4.

   B.  Minnesota Department of Revenue: $$86,840.16 – Will be paid in full pursuant to class 4.

CLASS 4 – Unsecured Claims

Class 4 consists of general unsecured claims, claims of all unsecured creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, claims resulting from the value of a secured claim being of a value less than the security held against held claim, and/or those secured creditors whose claims are determined to be unsecured, claims of all accommodation parties and co-makers or loans of which the Debtor is the principal, and claims for taxes and penalties which are not included in any other Class. Any priority claims shall be paid prior to payment of non-priority, general unsecured claims.

Debtors will pay allowed unsecured claims, in the total approximate amount of $266,828.74, over the five-year term of the plan. The Debtors shall pay the unsecured creditors at least an amount equal to the amount required in the liquidation analysis set forth in Exhibit A. Debtor's anticipate that all unsecured creditors will be paid in full. Debtors' shall pay Trustee $60,000.00 per year over the course of the plan for a total amount of $300,000.00. Payments shall be made by December 31 of each year or earlier.

| 2022 Total Payment to Trustee | $60,000.00 |
|---|---|
| | |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Unsecured Creditors | $54,000.00 |

| 2023 Total Payment to Trustee | $60,000.00 |
|---|---|
| | |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Unsecured Creditors | $54,000.00 |

| 2024 Total Payment to Trustee | $60,000.00 |
|---|---|
| | |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Unsecured Creditors | $54,000.00 |

| 2025 Total Payment to Trustee | $60,000.00 |
|---|---|
|  |  |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Unsecured Creditors | $54,000.00 |

| 2026 Total Payment to Trustee | $60,000.00 |
|---|---|
|  |  |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Unsecured Creditors | $54,000.00 |

CLASS 5 – Executory Contracts and Leases

Class 5 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this section. The debtor assumes the following executory contracts and leases:

A. None

## ARTICLE V
CONTINUATION OF FARMING OPERATION

The Debtor propose to continue their farm operation on a smaller scale and liquidate some of their property. Debtor shall defer from the income and proceeds of said operation sums of money for reasonable and necessary farm expenditures. Such expenses would include the ordinary, reasonable expenses that are set forth in the exhibits attached hereto, including payments to creditors outside of the plan and reasonable capital improvements, including machinery, equipment, and livestock. Debtor's projections of income, operating expenses, and payments are attached as Exhibit B.

The However, it is understood that any significant purchases that require new debt to be incurred will need court approval. As part of the continuing farm operation, Debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. All disposable income as defined by 11 U.S.C § 1225(b)(2) received during the term of the plan will be applied to make payments under the plan.

## ARTICLE VI
LIVING EXPENSES

Debtors projection of living expenses is $50,000 per year starting in 2021. Debtor's living expenses will primarily be paid by Debtors' off-farm income. The Debtor shall limit their annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

7

## ARTICLE VII
DISPOSABLE INCOME

The Debtors' projections of gross income, operating expenses, living expenses and plan payments indicate that he may have disposable income annually in the approximate amount of **$60,000.00**. For the term of this Plan, all of the Debtor's disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to unsecured creditors. All disposable income (future earnings not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the Debtor and his dependents) for 5 years following the effective date, shall be submitted to the Trustee  for distribution. All creditors with Class 4 – General Unsecured Claims shall be paid a pro rata  share of disposable income after administrative and priority claims have been paid.

## ARTICLE VIII
LIQUIDATION ANALYSIS

After deducting the amounts of the secured claims, exemptions, liquidation costs the Debtors' believe net equity in their property is $1,024,405.00.  The priority unsecured class (but not including attorney's fees and Trustee's fees) and non-priority unsecured class of claims shall receive, in total, a minimum distribution of $1,024,405.00 or payment in full of allowed claims, whichever is less.  The  Liquidation Analysis is attached as Exhibit A.

## ARTICLE IX
POST-PETITION GOVERNMENT TAX CLAIMS

Pursuant to 11 U.S.C. §1232(a), the claims of the IRS and the Minnesota Department of Revenue arising after the filing of the petition in this case and prior to the discharge as a result of the sale, transfer, exchange, or other disposition of property used in Debtor's farming operation shall be discharged and treated as unsecured claims arising before the date of filing and are not entitled to priority, i.e. part of Class 4.  If the Debtor files a tax return for a period for which such a claim arises, the Debtor shall prepare and service a notice of the claim on the IRS and the Minnesota Department of Revenue in accordance with 11 U.S.C. § 1232(d)(2) and to the extent that the IRS, Minnesota Department of Revenue, or the trustee timely files a proof of claim pursuant to 11 U.S.C. § 1232(d)(3), the trustee shall pay the IRS and the Minnesota Department of Revenue as general unsecured creditors.

## ARTICLE X
EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue their farming operations and make the plan payments out of farm or other income. The debtor's projection of income, operating expenses, and plan payments are attached as Exhibit B.

## ARTICLE X
### EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue their farming operations and make the plan payments out of farm or other income. The debtor's projection of income, operating expenses, and plan payments are attached as Exhibit B.

## ARTICLE XI
### RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this Plan shall retain his liens on the collateral securing their respective claims as specified in the Plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this Plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference as if more fully set out in this plan. This Plan and the Order confirming the Plan may be recorded in the Office of the Register of Deeds of each county.

## ARTICLE XI
### GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the Debtor and his property for the term of the Plan.

2. As part of the continuing farm operation, the Debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The Debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

Dated: July 6, 2021

STERMER & SELLNER, CHTD.

_Krystal M Lynne_ _____ Krystal
Attorney for Debtors
102 Parkway Drive, P.O. Box 514
Montevideo, MN 56265
Telephone: (320) 269-6491
E-mail: klynne@stermerlaw.com

Dated: July 6, 2021

_Wade S. Kallevig_
Wade Stephen Kallevig

Dated: July 6, 2021

_Christina Marie Kallevig_
Christina Marie Kallevig

9

# EXHIBT A
# LIQUIDATION ANALYSIS

## WADE & CHRISTINA KALLEVIG

| Asset | Value | Lien | 2nd Lien | Exemption | NE Value |
|---|---|---|---|---|---|
| Real Property | | | | | |
| Property ID 12-034-0012 | $178,500.00 | BB - $178,500.00 | | $178,500.00 | $0.00 |
| Property ID 33-006-0035 | $506,800.00 | HB - $506,800.00 | | | $0.00 |
| Property ID 33-006-0045* | $366,900.00 | | | | $366,900.00 |
| Property ID 13-027-0030* | $141,925.00 | | | | $141,925.00 |
| Property ID 13-030-1070 | $5,500.00 | | | | $5,500.00 |
| Property ID 13-034-0011 | $352,250.00 | | | $704,800.00 | $0.00 |
| Property ID 13-027-0110 | $404,000.00 | HB - $404,000.00 | | | $0.00 |
| | | | | | |
| Chattel | | | | | |
| Equipment/Machinery | $403,450.00 | | | | $403,450.00 |
| | | | | | |
| Vehicles | | | | | |
| 2014 Ford Expedition | $14,000.00 | | | $5,000.00 | $9,000.00 |
| 2000 Ford Ranger | $3,000.00 | | | $3,000.00 | $0.00 |
| 2017 Ford Edge | $20,507.00 | WF - $12,150.00 | | $5,000.00 | $3,357.00 |
| 2003 International 9200 | $18,500.00 | | | | $18,500.00 |
| 2007 International 4300 | $14,000.00 | | | | $14,000.00 |
| 2017 DC Tilt Trailer | $2,500.00 | | | | $2,500.00 |
| 12' Alum Utility Trailer | $1,000.00 | | | | $1,000.00 |
| 2013 Wilson Trailer | $25,000.00 | | | | $25,000.00 |
| 2012 Talbert Trailer | $45,000.00 | | | | $45,000.00 |
| 2016 Wilson Trailer | $26,500.00 | | | | $26,500.00 |
| 2007 International 9900 | $27,000.00 | | | | $27,000.00 |
| 2013 Chevy Equinox | $3,500.00 | | | | $3,500.00 |
| 2015 Chevy Silverado | $10,000.00 | SK - $10,000.00 | | | $0.00 |
| Jet Step Deck Trailer | $3,500.00 | | | | $3,500.00 |
| 2006 25' Contrail Trailer | $2,500.00 | | | | $2,500.00 |
| 2018 Ford F350 | $50,000.00 | | | | $50,000.00 |
| | | | | | |
| Household/Misc. | | | | | |
| Household Goods | $5,000.00 | | | $5,000.00 | $0.00 |
| Electronics | $500.00 | | | $500.00 | $0.00 |
| Books and DVDS | $200.00 | | | $200.00 | $0.00 |
| Artwork | $500.00 | | | | $500.00 |
| Toy Tractors | $1,000.00 | | | | $1,000.00 |
| Guns | $5,650.00 | | | | $5,650.00 |
| Misc. Clothing | $500.00 | | | $500.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| Jewelry | $5,000.00 | | | $5,000.00 | $0.00 |
| Cash | $200.00 | | | $150.00 | $50.00 |
| Heritage Checking xxx2564 | $40.77 | | | $30.58 | $10.19 |
| Heritage Checking xxx2572 | $29.58 | | | $22.19 | $7.39 |
| Bremer Checking xxx6040 | $302.28 | | | $226.71 | $75.57 |
| Bremer Checking xxx1842 | $59.65 | | | $44.74 | $14.91 |
| Bremer Checking xxx6720 | $34.29 | | | $25.71 | $8.58 |
| Highwater Ethanol 4 shares | $22,600.00 | | | | $22,600.00 |
| Kallevig Agriproducts | $1.00 | | | $0.00 | $1.00 |
| Tupperware | $200.00 | | | $200.00 | $0.00 |
| Christina IRA | $70,714.10 | | | $70,714.10 | $5,000.00 |
| Wade IRA | $139,994.32 | | | $139,994.32 | $0.00 |
| Education IRAs | $13,115.25 | | | $13,115.25 | $0.00 |
| Term Life Insurance | $0.00 | | | $0.00 | $0.00 |
| Corn | $38,059.03 | | | | $38,059.03 |
| Winter Wheat | $18,0000.00 | HB - $18,000.00 | | | $0.00 |
| 1999 Polaris | $1,000.00 | | | $1,000.00 | $0.00 |
| Fertilizer | $21,693.34 | | | $21,693.34 | $0.00 |
| Portable Fish House | $250.00 | | | | $250.00 |
| Heritage Checking xxx2556 | $500.00 | | | | $500.00 |
| R.J. O'Brien Hedging | $1,000.00 | | | | $1,000.00 |
| Office Furniture | $500.00 | | | | $500.00 |
| Officer Equipment | $1,000.00 | | | | $1,000.00 |
| Central Lakes Co-op Stock | $49,464.89 | | | | $49,464.89 |
| Paynesville Co-op Stock | $964.80 | | | | $964.80 |
| Glacial Plains Co-op Stock | $5,244.00 | | | | $5,244.00 |
| West-Con Stock | $97.00 | | | | $97.00 |
| MN Soybeans Processors | $34,800.00 | HB - $34,800.00 | | | $0.00 |
| Bushmills Ethanol | $412,500.00 | HB - $412,500.00 | | | $0.00 |
| | | | | | |
| **Total NE Assets** | | | | | **$599,908.64** |
| **Total NE Assets (Inc.)** | | | | | **$677,720.69** |
| Liquidation | | | | | |
| Chapter 7 Trustee Fees | $61,579.00 | | | | |
| Liquidation Costs (15%) | $191,644.40 | | | | |
| | | | | | |
| Liquidation Analysis | | | | | **$1,024,405** |

*These properties are also secured by Heritage Bank, but the bank total debt is already covered by other collateral.

## **EXHIBIT B**
CASH FLOW ANALYSIS

**Projected Income**

|  | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|
| Income Source |  |  |  |  |  |
| Crops | $230,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 |
| Land Rent | $51,325.00 | $51,325.00 | $51,325.00 | $51,325.00 | $51,325.00 |
| Custom Work | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
| Gov. Payments | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-farm Income | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| K/D Payments |  |  |  |  |  |
| Total Est. | $346,325.00 | $296,325.00 | $296,325.00 | $296,325.00 | $296,325.00 |

**Estimated Expenses**

| Expense | Amount |  |  |  |  |
|---|---|---|---|---|---|
|  | 2022 | 2023 | 2024 | 2025 | 2026 |
| Fuel | $4,000.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Seed | $20,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Feed | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fertilizer | $29,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 |
| Chemicals | $9,000.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Equipment Rental | $3,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Electric & Phone Bills | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Repairs | $8,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Crop Insurance | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Other Insurance | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 |
| Real Estate Taxes | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Cash Rent |  |  |  |  |  |
| Hired Labor | $2,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Machine Hire | $8,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Drying | $5,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Misc. | $3,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
|  |  |  |  |  |  |
| Total Est. Expenses | $124,000.00 | $73,000.00 | $73,000.00 | $73,000.00 | $73,000.00 |
|  |  |  |  |  |  |
| Heritage Bank Loan | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 |
| John Deere Laon | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 |
| Bremer Bank Loan | $12,300.00 | $12,300.00 | $12,300.00 | $12,300.00 | $12,300.00 |
|  |  |  |  |  |  |
| Est. Living Expenses | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
|  |  |  |  |  |  |
| Net Disposable Income | $60,525.00 | $62,525.00 | $62,525.00 | $62,525.00 | $62,525.00 |